UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:01CV305-02
(3:96CR06-07-V)

LESTER McCOY,               )
  Petitioner,       )
        )
   v.            )    O R D E R
        )
UNITED STATES OF AMERICA,   )
  Respondent.       )
_____)

**THIS MATTER** is before the Court on the petitioner's original

and amended  Motions to Vacate, Set Aside, or Correct Sentence

under 28 U.S.C. §2255 (documents ## 1 and 21), filed June 5, 2001

and September 14, 2004, respectively; on the "Government's Response

To Petitioner's Motion to Vacate . . . " (document # 11), filed

June 20, 2002; on the "Petitioner's Reply To Government's Response

. . . " (document # 14), filed July 31, 2002; on the government's

"Answer To Petitioner's Amended Motion To Vacate . . . And Motion

For Summary Judgment" (document # 22), filed October 14, 2004; on

the petitioner's "[Response] In Opposition . . . And Motion For

Summary Judgment" (document # 29), filed January 31, 2005; on the

"United States' Response . . ." (document # 34), filed March 3,

2005; and on the petitioner's "Motion And Memorandum For Bail"

(document # 35), filed March 25, 2005.

Upon careful review by the Court has determined, for the reasons stated herein, that the petitioner's Motion for Bail must be <u>denied</u>; that the petitioner's Motion for Summary Judgment must be denied; that the government's Motion for Summary Judgment must be <u>granted</u>; and the petitioner's original and amended Motions to Vacate must be <u>denied</u> and <u>dismissed</u>.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the record, on June 3, 1996, a Superceding Bill of Indictment was filed, charging the petitioner (along with six others) with conspiracy to possess with intent to distribute, and to distribute, unspecified quantities of heroin, cocaine base, cocaine powder and marijuana, all in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); and the petitioner was named in a forfeiture allegation set forth in Count Three of the Indictment.

On January 23, 1996, an Information pursuant to 21 U.S.C. §841(b) was filed in connection with the original Bill of Indictment, asserting that the amount of heroin involved in the conspiracy was in excess of 1 kilogram; that the amount of cocaine base which was involved was in excess of 50 grams; that the amount of cocaine powder which was involved was in excess of 5 kilograms; and that the amount of marijuana which was involved was in excess of 100 kilograms.

Following his arraignment, the petitioner's case was scheduled

for a jury trial,[1] which began September 23, 1996 and lasted about three weeks. During the course of the subject trial, the government presented numerous witnesses against the petitioner and his co-defendants.

Indeed, the government presented evidence which established that the petitioner was a member of a drug conspiracy which had dealt in large quantities of heroin, crack and powder cocaine, marijuana and drug paraphernalia over a two decade period. Such organization operated primarily by purchasing seemingly legitimate businesses in socioeconomically depressed communities around Charlotte, and then using such businesses as fronts for the conspirators' illegal drug-selling activities. With particular relevance here, the government presented testimony from numerous convicted drug dealers who established that Will Rhynes was the leader of the conspiracy, but the petitioner held a managerial role in that organization.

For instance, Theodore Howze testified that he purchased $4,400 (or about four ounces) of cocaine from the petitioner on one occasion during the life of the conspiracy. Howze further testified that during the period when he made the subject purchase from the petitioner, the petitioner was working at a sham business named "The

---

[1]Although this case originally was assigned to the Honorable Richard L. Voorhees, the trial actually was conducted by the Honorable Charles H. Haden, II, United States District Judge for the Southern District of West Virginia, who has since passed away. In any event, this collateral Motion has been assigned to Judge Voorhees, and he shall enter the final Judgment in this matter.

Hi Energy Party Shop" ("The Party Shop" hereafter)--a store front originally owned by co-conspirator, Mike Rhynes. The petitioner subsequently purchased The Party Shop from Rhynes and continued to use it as a front for illegal activities. Howze also stated that on at least one other occasion, the petitioner sold him quinine which he used as a diluting agent to increase the quantity of the heroine which he was selling (Tr. pp. 270-330).

Shirley Ingram Jr. also testified against the petitioner. Mr. Ingram stated that beginning in the 1990s, the petitioner became his "fence" for stolen goods. Ingram explained that he would steal items such as tennis shoes and shirts and exchange them for cocaine from the petitioner at The Party Shop. According to Ingram, this fencing arrangement went on for a couple of months during which time he would make his trades with the petitioner about three to four times per day. In return for each exchange, Ingram stated that he received a gram or more of cocaine from the petitioner. (Tr. pp. 635-37).

The government also called Andy Stinson as a witness against the petitioner. Mr. Stinson stated that in 1984 or 1985, he sold small amounts of powder cocaine to the petitioner at The Party Shop, usually on consignment. (Tr. p. 1164).

Michael Pahutski was another witness against the petitioner. Mr. Pahutski told the jury that he first came in contact with the petitioner when he was hired to be the petitioner's bookkeeper.

(Tr. p. 1791). However, in about 1992, the petitioner provided Pahutski with his first dosage of cocaine. After that point, the petitioner reportedly began supplying Pahutski with small quantities of cocaine for his personal use. Eventually, Pahutski started purchasing ounce-size packages of cocaine from the petitioner, some of which packages Pahutski received on consignment. Pahutski further testified that he diluted and re-sold the drugs from those ounce-size packages. (Tr. pp. 1832-36).

Pahutski also told the jury that he saw chemicals used for diluting drugs and other drug paraphernalia at The Party Shop when that business was under the petitioner's ownership; that on one occasion, the petitioner explained to him how to use a substance referred to as "come back" to transform cocaine into crack; and that he purchased diluting agents, a grinder for grinding cocaine and a set of digital scales from the petitioner at The Party Store. (Id.).

In addition to the foregoing, the government also presented testimony from witnesses who testified concerning the drug paraphernalia and/or expertise they received from the petitioner. For example, Gary Cannon testified he purchased small "baggies" from the petitioner which Cannon used to package cocaine for resale. Cannon also testified that beginning in about 1993, the petitioner explained to him how to use diluting agents to increase his supply of drugs so that he would have more drugs to sell. Cannon began purchasing those chemicals from the petitioner. Cannon further

testified that he had observed the petitioner associating with Rhynes beginning as long ago as 1977 (Tr. pp. 713-760).

Marvin Graham testified that on several occasions between 1992 and 1993, he bought multiple cases of chemicals from the petitioner which he used to dilute his cocaine and to convert it into crack. Graham also stated that the petitioner sold him plastic "baggies" which he used to package his drugs. (Tr. pp. 1278-1347). Manning Sweat told the jury that he purchased the diluting agents, plastic "baggies" and false-bottom cans from the petitioner at The Party Shop. Sweat also testified that he used the "baggies" to package his crack cocaine; and that he used the false-bottom cans to hide drugs. (Tr. pp. 1386- 1417). D.S. Davis, Tyran Hicks, and Timothy Perry also testified that on different occasions they each had purchased paraphernalia, such as "baggies" and diluting agents from the petitioner between the years of 1990 and about 1993 or 1994. (Tr. pp. 1500-01; 1639-40; and 1680-81).

Finally, Charlotte Mecklenburg Police Officer James Hart testified concerning a search of The Party Shop in July 1994. According to Hart, that search revealed a room where large quantities of drug paraphernalia were stored. Such paraphernalia included the "baggies," the diluting chemicals, and the false-bottom containers about which the other witnesses had testified. The search also resulted in the discovery of devices used for consuming illegal drugs. (Tr. pp. 2048, et seq).

For his part, the petitioner presented a defense through the testimony of several family members, attempting to establish that his only association with the co-conspirators related to his legitimate business activities; and that he was not a drug dealer as the government's witnesses had indicated. (Tr. pp. 2176-2210). However, at the conclusion of the trial, the petitioner was convicted of the conspiracy charge.

After the jury's verdict, the petitioner filed a Motion for a Judgment of Acquittal, contending that the evidence was insufficient to establish his involvement with a conspiracy. The petitioner also filed a Motion for a new trial; and he joined in with his co-conspirators' Motion for a new trial. Primarily, those Motions were based upon an alleged violation of the Court's sequestration Order, and upon questions about the scope of certain cross-examinations by defense attorneys. Ultimately, however, by the Court's Order of April 25, 1997, all of those Motions were denied on the Court's finding that none of the defendants' constitutional rights had been violated.

Next, the government filed a Sentencing Memorandum contending that under the preponderance-of-the-evidence standard, the petitioner should be held accountable for involvement with the drug equivalent of about 10,000 kilograms of marijuana. However, the petitioner filed a Sentencing Brief, contending that he should be held accountable for involvement with no more than 434 grams of

7

powder cocaine (or the drug equivalent of 35.11 kilograms of marijuana).

Thereafter, on June 3, 1997, the Court held a Sentencing Hearing. On that occasion, the Court considered the petitioner's objections concerning the Pre-Sentence Report's finding that he was subject to sentencing for about 10,000 kilograms of marijuana. Such recommendation was based upon the testimony that the petitioner had trafficked in 500 grams of crack cocaine, ½ kilogram of powder cocaine and 8 grams of heroin. The Court also considered the petitioner's objection to the recommendation that he was subject to increases in his Offense Level for his co-conspirators' possession of firearms and for his managerial role in the offense.

In response to the petitioner's objections, the government noted the trial testimony and evidence, along with statements made by witnesses during its interviews with those individuals. However, because of the efforts of the petitioner's trial counsel, the Court sustained two of the petitioner's objections. That is, the Court agreed that the drug quantity estimates were too high, and so the Court reduced the amount attributed to the petitioner from the drug equivalent of 10,000 to 3,000 kilograms of marijuana. The Court also found that the petitioner should be subject to a two, rather than three-level managerial enhancement for his role in the offense.

On the other hand, the Court agreed with the government that the petitioner was properly subject to the firearm-related enhance-

ment.  Consequently, the Court found that the petitioner's total Offense Level was 38 and his Criminal History Category was II, thereby exposing the petitioner to a term of 262 to 327 months imprisonment.  At the conclusion of that Hearing, the Court sentenced the petitioner to a term of 262 months imprisonment.  The petitioner timely noted his appeal.

On appeal, a number of issues were raised by the petitioner and his co-defendants.  Of particular significance here, the petitioner challenged the sufficiency of the evidence to support his conviction.  See United States v. Rhynes, et al., 196 F.3d 207, 219(4th Cir. 1999), vacated in part on other grounds on reh'g en banc, 218 F.3d 310 (4th Cir. 2000).  However, the appellate Court found that "[d]rawing reasonable inferences from the facts presented to it . . . the jury could find that defendants were knowingly and voluntarily involved in the conspiracy."  Id. at 225.  Therefore, the Court of Appeals found the evidence sufficient to support the defendants' conspiracy conviction.  Id.

The petitioner also challenged his sentence, contending that in light of the Indictment's allegations that he had conspired to traffic in several different types of drugs, and the general verdict form which was used by the jury, his sentence had to be vacated because it was "impossible to determine which controlled substance the jury may have found was the object of the conspiracy."  Id. at 238.

The Fourth Circuit, relying principally upon the Supreme Court's ruling in Edwards v. United States, 523 U.S. 511 (1998), found that the petitioner's sentence did not exceed the term authorized under the law. Id. at 239. In particular, the Fourth Circuit was satisfied that the evidence pertaining to the petitioner reflected his involvement with at least eight grams of heroin, thereby exposing him to the enhanced 30-year statutory term by virtue of his prior felony drug conviction. Id. at 239, n.3. Therefore, the appellate Court concluded that the petitioner's 262-month sentence did not violate Edwards, and so the appellate Court affirmed both the petitioner's conviction and sentence.

The petitioner did not seek further direct review of his case. Rather, on June 5, 2001, the petitioner--through newly retained counsel--filed the instant Motion to Vacate. By this Motion and its properly allowed amendments, the petitioner argues that he was subjected to ineffective assistance of counsel in several distinct instances; that the Apprendi and Bailey decisions should be applied retroactively to his case; and that even if those rulings are inapplicable, he is entitled to relief due to counsel's failure to raise Apprendi and Bailey-type claims (see 3:01CV30 5, documents ## 1 and 21).

On June 20, 2002 and October 14, 2004, the government filed responses to the petitioner's Motion to Vacate (see document ## 11 and 22). In summary, such responses assert that Apprendi and its

line of reasoning cannot be retroactively applied in this collateral proceeding; and that the petitioner has failed to demonstrate either deficient performance or prejudice in connection with his claims against trial counsel. Accordingly, the government asks the Court to grant its Motion for Summary Judgment.

On July 31, 2002, the "Petitioner's Reply To Government's Response . . . " was filed, and on January 31, 2005, the petitioner's combined response to the government's Motion for Summary Judgment and his own Motion for Summary Judgment was filed (document ##14 and 29, respectively). The petitioner's pleadings essentially are aimed at counterbalancing the government's attack on his claims. Such documents also attempt to clarify what habeas counsel calls "mis-characterizations" of his arguments by the government. Furthermore, in support of his claim that he was denied his right to testify, the petitioner submitted an affidavit stating that had he been permitted to testify, he would have denied the testimony of the four witnesses who reportedly had engaged in drug transactions with him.

In addition, habeas counsel attempts to set forth a new claim against appellate counsel in his Motion for Summary Judgment. Nevertheless, for the reasons set forth herein, the petitioner is not entitled to any relief.

## II.  **ANALYSIS**

### 1.  **Apprendi[2] cannot be retroactively applied in this collateral proceeding**.

Taking his claims out of turn, the Court proceeds first to the petitioner's Apprendi-based claims.  The essence of these claims is that the holdings from the Apprendi line of cases should be applied in order to grant the petitioner relief on his allegation that his Indictment lacked all of the essential elements.  Such claims, however, will not long detain the Court.

Indeed, it is now abundantly clear that the rule announced in Apprendi, and further established by its progeny--Blakely[3] and Booker/ Fanfan--is not applicable in collateral proceedings such as these.  See United States v. Sanders, 247 F.3d 139 (4th Cir.) (holding that Apprendi is not retroactively applicable to cases which are before the Court on collateral review), cert. denied, 534 U.S. 1032 (2001); and United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005) (holding that Booker also is not retroactively applicable on collateral review).  See also United States v. Fowler, No. 05-6493, slip op. at 1 (W.Va. June 17, 2005) (holding that "neither

---

[2]Apprendi v. New Jersey, 530 U.S. 466 (2000) (holding that any factor other than a prior conviction, which increases the statutory maximum term, must be alleged in the indictment and proven beyond a reasonable doubt or admitted by the defendant).

[3]In Blakely v. Washington, 542 U.S. 296 (2004), the Court held that for Apprendi purposes, the statutory maximum term is the "maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  In United States v. Booker/Fanfan, 543 U.S. 220 (2005), the Court held, in part, that the rule announced in Blakely is applicable to federal defendants who are sentenced under the U.S. Sentencing Guidelines.

*Booker* nor *Blakely* announce a new rule of constitutional law made retroactive by the Supreme Court to cases on collateral review.").

Plainly stated, the petitioner is not entitled to raise his *Apprendi*-based claims in the instant Motion to Vacate. Consequently, those claims must be summarily dismissed.

> 2. **The petitioner's claims that counsel was ineffective for having failed to raise an Apprendi-based objection to the Indictment, and for having failed to object to the Court's determination of the drug quantity also must be summarily rejected**.

By these two claims, the petitioner alleges that counsel was ineffective because he failed, even prior to the announcement of the *Apprendi* decision, to raise *Apprendi*-type challenges to the absence of certain information in the Indictment, and because counsel failed to challenge the Court's use of the preponderance-of-the-evidence standard in calculating his sentence. It goes without saying, however, that the petitioner cannot demonstrate any prejudice in connection with these two allegations.

To be sure, *habeas* counsel argues that trial counsel was deficient for not arguing that the Indictment "did not have a recitation of all the elements of the offense." Although *habeas* counsel does not say so, the Court presumes that the missing "elements" about which he complains are the drug quantities. In any event, this Court is well aware that at the time that the petitioner was tried, convicted and sentenced, drug quantities were not elements of the offense, but were considered sentencing factors

13

which the government needed to prove only by a preponderance of the evidence. See, e.g., United States v. Dorlouis, 107 F.3d 248, 252 (4th Cir. 1997); United States v. Fletcher, 74 F.3d 49, 53 (4th Cir. 1996); and United States v. Heater, 63 F.3d 311, 322 (4th Cir. 1995). Consequently, counsel cannot now be deemed deficient for having chosen not to raise a challenge which this Court would have been required to reject under the legal precedent which then was controlling.

Nor could counsel have been deficient for not challenging the Court's method of calculating the drug quantity inasmuch as its calculations were consistent with the manner in which sentences were calculated, both prior to and immediately after the Apprendi decision was announced. To be sure, prior to Apprendi, it was well-established that the sentencing judge determined drug quantity, as well as other sentencing factors, under a preponderance of the evidence standard. See, e.g., United States v. Heater, 63 F.3d 311, 322 (4th Cir. 1995) (drug quantity not an element of the offense); United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994) (same). Such was the practice even in cases where the determination subjected the defendant to a sentence above the statutory maximum.

Moreover, even after Apprendi was announced, the Fourth Circuit approved of district courts making factual determinations concerning drug quantities, so long as those determinations did not result in a sentence which exceeded the statutory maximum term which

**14**

corresponded to those findings. See United States v. Kinter, 235 F.3d 192, 201 (4ᵗʰ Cir. 2000), cert. denied, 532 U.S. 937 (2001). Once again, therefore, trial counsel could not have been deficient for having chosen not to challenge matters which were properly decided at the time that counsel was scrutinizing them.

### 3. The petitioner has failed to show that he was prejudiced by not having testified.

By this claim, the petitioner alleges that counsel was ineffective for having ignored his request that he testify on his own behalf. Ultimately, based upon the nature of the testimony which the petitioner asserts that he would have given, the Court finds that the petitioner cannot prevail on this claim.

Turning now to the relevant standard by which counsel's performance is to be analyzed, the law is clear that the petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998), <u>cert. denied</u>, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Id</u>., <u>quoting</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993). Under these circumstances, the petitioner "bears the burden of proving <u>Strickland</u> prejudice." <u>Fields</u>, 956 F.2d at 1297, <u>citing</u> <u>Hutchins</u>, 724 F.2d at 1430-31.

Most critically, if a petitioner fails to meet this burden of demonstrating prejudice, <u>i.e.</u>, a fundamentally unfair or unreliable proceeding, then the "reviewing court need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1290, <u>citing</u> <u>Strickland</u>, 466 U.S. at 697.

Looking first at the performance prong, <u>habeas</u> counsel does not claim that counsel totally neglected to talk with him regarding whether or not he should testify. Rather, <u>habeas</u> counsel asserts that trial counsel failed to inform the petitioner that it was his "'ultimate authority to decide' whether he wanted to testify"(citation omitted). For its part, the government submitted an affidavit from trial counsel stating that he and the petitioner "repeatedly" discussed the issue of whether or not the petitioner

would testify during the course of the trial; and that the petitioner ultimately decided not to testify.

The law is well settled that "a criminal defendant has a constitutional right to testify on his own behalf at trial." United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003). However, the "advice provided by a criminal defense lawyer on whether his client should testify is a 'paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance.'" Carter v. Lee, 283 F.3d 240, 249 (4th Cir. 2002); quoting Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984).

Thus, in light of the specific allegations and the relevant law, this Court cannot conclude that counsel performed deficiently in his interaction with the petitioner concerning whether or not the petitioner should testify. Moreover, even if the petitioner could establish deficient performance on this claim, he still has fallen far short of demonstrating the requisite prejudice in order to prevail here.

To be sure, regarding the prejudice prong, the petitioner alleges that he wanted to testify in order to deny the testimony that he had dealt drugs with the government's witnesses. Indeed, the petitioner has submitted affidavits, asserting that had he testified, he would have stated, inter alia, that he had not conducted a drug deal with witness Howze at The Party Shop before

1989, because that business was not operating at that time. The petitioner claims he also would have testified that he did not conduct a four-ounce cocaine deal with Howze at any point; that he never traded goods for drugs with witness Ingram; that he did not purchase cocaine from witness Stinson; and that he never gave or sold cocaine to witness Pahutski. Based upon the foregoing, then, it appears that the petitioner's testimony would have consisted exclusively of his own self-serving denials of the damaging testimony which was presented against him.

Oddly enough, it is also clear that the petitioner did <u>not</u> intend to deny the other testimony which was presented against him. Such testimony established that in addition to having engaged in drug transactions, the petitioner also supported the conspiracy by selling drug paraphernalia to its customers, by counseling its customers concerning how they could increase their drug supplies with diluting agents, and by counseling its customers concerning their conversion of powder cocaine into crack cocaine.

As such, it is highly unlikely that in the face of such other unchallenged testimony the jury would have put a great deal of stock into the petitioner's denials. Consequently, on this record--and particularly in light of the fact that he actually <u>did</u> present witnesses who denied that he was a drug dealer--the petitioner simply cannot demonstrate that his failure to testify resulted in a fundamentally unfair or unreliable proceeding.

### 4. The petitioner was not prejudiced by the evidence which his attorney presented.

As to this claim, habeas counsel argues that trial counsel was ineffective for having failed to present evidence favorable to the defense. In support of the claim, habeas counsel has submitted affidavits from two individuals who both say that they would have been willing to testify for the petitioner had they been called to do so. In sum, the affiants' statements tend to establish that they both knew the petitioner for more than a decade; that during the period in question, they had occasion to visit the petitioner's store; and that during those visits, they never witnessed any drug dealing activities by the petitioner.

However, as has been noted, the petitioner actually presented witnesses who established that both illegal and legal--albeit unprofitable--business activities took place at The Party Shop. Moreover, the Court finds that the proposed witnesses' statements would not have prevented the jury from reasonably concluding that on the occasions when such witnesses were not around the petitioner, he dealt drugs from his business as the government's witnesses had testified. Therefore, it is questionable whether this additional testimony would have had any real value for the petitioner. As such, the petitioner simply cannot demonstrate any actual prejudice from the omission of the proffered testimony.

### 5. The petitioner was not prejudiced by the jury's use of a general verdict form.

19

By this claim, habeas counsel argues that because there were several conspiratorial acts and varying types and quantities of drugs involved in the conspiracy charge, trial counsel should have sought a special verdict form for the jury in order to "clear[] any ambiguity concerning McCoy's involvement in the offense or the quantities of drugs attributable to him." However, as habeas counsel acknowledged—at least to some extent—the Fourth Circuit already has put this claim to rest.

Indeed, as habeas counsel noted, the Court of Appeals found that the government had failed in its duty to seek a special verdict form; and that in the absence of such form, it was impossible to determine on what statutory object the jury had convicted the petitioner and his co-defendants. Nevertheless, the appellate Court affirmed the petitioner's conviction, finding that such 262-month sentence did not exceed the 30-year statutory maximum term to which the petitioner properly was exposed under 21 U.S.C. §841(b)(1)(C). Rhynes, 196 F.3d at 239, n.3.

Consequently, inasmuch as the question of whether or not the general verdict form violated the petitioner's rights already has been raised and rejected on direct appeal, the petitioner cannot prevail in his current attempt to resurrect this claim. To be sure, it is well settled that in the absence of a favorable, intervening change in the law, a petitioner simply is not free to re-litigate claims which already were rejected on direct review. Davis v.

United States, 417 U.S. 333, 342 (1974); Boeckenhaupt v. United States, 537 F.2d 1182 (4ᵗʰ Cir.), cert. denied, 429 U.S. 863 (1976). Therefore, review of this claim is barred by the Fourth Circuit's adverse decision.

　　　Furthermore, to the extent that the petitioner has attempted to amend his Motion to Vacate (yet a second time) by reconfiguring this allegation and setting it out in his Motion for Summary Judgment, such attempt must be rejected. That is, in his original and amended Motion to Vacate, counsel for the petitioner merely argues that trial counsel was ineffective for having failed to challenge the absence of a special verdict form for the petitioner. However, in his Motion for Summary Judgment (filed January 31, 2005), counsel for petitioner argues for the first time, that appellate counsel was ineffective for having failed to challenge the appellate Court's determination that the petitioner's 30-year sentence was appropriate.

　　　According to habeas counsel, once the appellate Court concluded that the petitioner's 30-year sentence was appropriate despite the absence of the special verdict form, appellate counsel should have challenged that determination on the ground that the petitioner did not have a prior felony drug conviction which could have subjected him to the enhanced 30-year term under §841(b)(1)(C). In the alternative, habeas counsel contends that appellate counsel should have argued that even if the petitioner had sustained the qualifying

conviction, the government still could not have sought an enhanced sentence because it had not filed an enhancement notice in accordance with 21 U.S.C. §851(b).

Notwithstanding the potential merit of such proposed claim,[4] the law concerning the amendment of a Motion to Vacate is well settled. Although the provisions set forth in Rule 15 of the Federal Rules of Civil Procedure generally control the question of amendment, such Rules are further qualified by the provisions relating to the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" hereafter). In particular, the AEDPA requires that all claims which collaterally attack a conviction or sentence must be brought within one year of the time that such underlying conviction and sentence became final.

In the instant case, the appellate Court issued the final mandate by which it affirmed the petitioner's conviction and sentence on August 1, 2000, and the petitioner did <u>not</u> seek further direct review of that decision. Consequently, the petitioner's conviction and sentence became final on August 1, 2000, thereby giving <u>habeas</u> counsel up to and including August 1, 2001 in which to file all collateral challenges to the petitioner's conviction and sentence. Although <u>habeas</u> counsel filed the original Motion to Vacate before the expiration of his one-year limitations period, the

---

[4]A review of the record shows that the petitioner did <u>not</u> have a qualifying felony drug conviction, which would explain why the government did <u>not</u> file a §851(b) notice.

instant proposed claim was not asserted until January 2005, which was well _after_ the one-year period had expired.

Furthermore, counsel for the petitioner did not even address the issue of timeliness, or otherwise attempt to demonstrate that the subject claim should not be deemed time-barred. Therefore, the Court had to determine whether or not such claim could be construed as relating back to any timely-filed claim so as to entitle the petitioner to a review on the merits. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (noting that an otherwise time-barred claim can be rendered timely if such claim "arose out of the conduct, transaction, or occurrence set out . . . in the original pleading."). However, the Court has concluded that such claim does _not_ relate back to any timely-filed allegation.

To be sure, in his original Motion to Vacate, _habeas_ counsel argued that trial counsel was ineffective in a number of discrete ways, including for failing to challenge the government's use of a general verdict form. By the instant claim, _habeas_ counsel now seeks to argue that appellate counsel was ineffective for having failed to challenge the findings which the appellate Court relied upon to support its conclusion that the use of the general verdict form did not violate the petitioner's rights.

However, as was noted in _Pittman_, "[t]he fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back

**23**

for purposes of Rule 15(c)." Id. at 318. On the contrary, only those matters which arise from occurrences which are similar as to "both time and type" can be deemed to relate back under Rule 15(c). Id. (internal quotations omitted), quoting United States v. Craycraft, 167 F.3d 451, 456-57 (8th Cir. 1999). Indeed, in Craycraft, the Court expressly found that claims that counsel was ineffective for failing to file an appeal did not relate back to original claims that counsel had been ineffective for failing to seek a downward departure and for failing to object to the type of drugs at issue).

Thus, in the instant case, just as in Pittman and Craycraft, the petitioner's proposed claim against appellate counsel does not relate back to his original claims against trial counsel. To put it simply, the proposed claim that appellate counsel was ineffective for having failed to challenge a particular appellate finding does not relate back to his claim that trial counsel was ineffective for having failed to challenge the conclusion which was later used to support such appellate finding. Therefore, this proposed claim is time-barred.[5]

Moreover, even if this claim could be deemed timely filed, or

---

[5]The Court does not believe that this determination conflicts with its earlier decision to grant the petitioner's July 2004 Motion to Amend in order to allow him to present his Blakely and Booker claims inasmuch as those matters clearly related back to his timely-filed Apprendi claim. Moreover, permitting those amendments also was reasonable because at the time that they were proposed, the law was unsettled as to whether or not such newly announced Supreme Court rulings could be retroactively applied in habeas proceedings such as these.

the limitations period could be equitably tolled in order to allow the petitioner to proceed with this claim, such fact would be of little consequence in this case. Rather, in order for this Court to grant the petitioner any relief on this proposed claim, the Court ultimately would have to overrule the Fourth Circuit's explicit findings that the petitioner had a prior felony drug conviction, and that the government had satisfied the prerequisites which allowed him to be subjected to the enhanced 30-year statutory maximum term. Rhynes, 196 F.3d at 239, n.3. Clearly, this Court lacks the authority to take such action against the Fourth Circuit's findings; therefore, this claim will be dismissed as time-barred.

Finally, it goes without saying that in light of this Court's decisions regarding the foregoing Motions, the petitioner's Motion for Bail (document # 35) also must be denied.

### III. CONCLUSION

On this record, the petitioner is not entitled to raise his Apprendi-based claims in this collateral proceeding. Furthermore, the petitioner has failed to demonstrate ineffective assistance and/or resulting prejudice in connection with his claims against counsel. Consequently, the Court finds that the government's Motion for Summary Judgment must be granted; that the petitioner's Motion for Summary Judgment must be denied; and that the instant Motion to Vacate must be denied and dismissed.

## IV.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  That the government's Motion for Summary Judgment (document # 22) is **GRANTED**;

2.  That the petitioner's Motion for Summary Judgment (document # 29) is **DENIED**;

3.  That the petitioner's Motion to Vacate as amended (documents ## 1 and 21) is **DENIED** and **DISMISSED**; and

4.  That the petitioner's Motion for Bail (document # 35) is **DENIED**.

The Clerk shall send copies of this Order to habeas counsel, to the petitioner and to the United States Attorney.

**SO ORDERED.**

Signed: July 6, 2006

Richard L. Voorhees
United States District Judge

26